# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 2, 2008 Session

## STATE OF TENNESSEE  v. COREY GILLIAM

**Appeal from the Criminal Court for Shelby County**
**No.  06-06976     Chris Craft, Judge**

---

**No. W2007-02401-CCA-R3-CD  - Filed September 22, 2009**

---

The Defendant-Appellant, Corey Gilliam, was convicted by a Shelby County jury of theft of property valued at over $1,000, felon in possession of a handgun, leaving the scene of an accident resulting in injury, and driving on a suspended license.  He was sentenced to twelve years as a career offender for the theft of property conviction, six years as a career offender for the felon in possession of a handgun conviction, eleven months and twenty-nine days for the leaving the scene of an accident resulting in injury conviction, and eleven months and twenty-nine days for the second or subsequent driving on a suspended license conviction.  The trial court ordered the sentences to be served consecutively.  In this appeal, the defendant argues: (1) the insufficiency of the evidence; (2) the trial court erred by providing the jury with an instruction on reasonable doubt that was unconstitutional; (3) the trial court erred by finding that the defendant's 2007 conviction for aggravated robbery was admissible for impeachment; (4) the imposition of consecutive sentencing violated the Sixth Amendment; (5) the State failed to elect when the defendant drove on a suspended license in the indictment; and (6) the jury instructions for leaving the scene of an accident resulting in injury and driving on a suspended license failed to charge a mens rea.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. C. MCLIN, JJ., joined.

Joseph S. Ozment, Memphis, Tennessee, for the defendant-appellant, Corey Gilliam

Robert E. Cooper, Jr., Attorney General and Reporter Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dean DeCandia, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Facts**.  At trial, the victim in this case, Jarriel Twillie, testified that he borrowed his girlfriend's Nissan Maxima on the night of the offense.  At approximately 1:00 a.m., he was parked at a Gas Express in Shelby County, talking to a friend, when he noticed the defendant, Corey Gilliam, at a pump station.  Gilliam sat in the passenger's seat, and Gilliam's girlfriend occupied the

driver's seat. The victim recognized Gilliam from his neighborhood, but they were not friends. The victim's friend left the gas station, and Gilliam walked towards the victim. Gilliam's girlfriend then drove her vehicle to the side of the gas station.

The victim testified that Gilliam looked like "he was up to something" and that his eyes were "buck like". Gilliam asked the victim for "a couple of dollars", and the victim told Gilliam to get in his vehicle. The victim stepped into the driver's seat, and Gilliam got into the back seat of Gilliam's vehicle. The victim testified that he did not get into the vehicle to conduct a drug deal; rather, he said they got into the car because Gilliam did not want Gilliam's girlfriend to see him accepting money. The victim was facing forward in the car when he heard a gunshot from the back seat. The victim immediately jumped out and ran to Fantasy Warehouse, which was located next to the gas station. The victim testified that he watched Gilliam move into the driver's seat, rummage through the front area of the vehicle, and drive the vehicle off the lot. The victim said Gilliam's girlfriend left the gas station just before Gilliam drove off.

After Gilliam left the parking lot, the victim went into the gas station's store and told an employee to call the police. Before the police arrived, Gilliam returned to the gas station. The victim remained inside the store while Gilliam talked to him from outside. The victim said Gilliam indicated that he did not mean to harm the victim, but the victim told him to "just go on." Gilliam then drove away from the gas station.

Approximately seven hours later, Robert King was driving on Tutwiler Street when his vehicle was struck by a Nissan Maxima. The Nissan Maxima flipped over and came to rest in front of a church. King went to a nearby house and called 911. John Troup, a security guard at the church, heard the accident and also contacted the police. Troup saw Gilliam crawl out of the driver's side window of the flipped vehicle. Gilliam was injured, and Troup told him to wait for the ambulance. Troup watched Gilliam run for about two hundred yards into a wooded area.

An officer found Gilliam lying face down in a nearby ditch. He arrested Gilliam, and later found a handgun at the scene of the accident. The following day, Gilliam provided a written statement to the police. He stated that he intended to purchase drugs from the victim at the gas station, that his gun accidently went off in the back seat, and that he tried to explain this to the victim. Gilliam said he drove away from the gas station because he feared the police would soon arrive.

## ANALYSIS

**I. Sufficiency of the Evidence**. Gilliam challenges the sufficiency of the evidence for all of his convictions; however, the only argument presented in his brief relates to his conviction for theft of property. Although not entirely clear, Gilliam apparently contends that because the indictment alleges a theft of property from Jarriel Twillie, and the evidence at trial showed that Twillie's girlfriend had legal title to the property, the evidence was not sufficient to support his conviction. In response, the State contends that the evidence presented was sufficient to support Gilliam's conviction for theft of property because legal title is not required to prove ownership.

When a defendant challenges the sufficiency of the convicting evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) (2006) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, and this court will not reweigh or reevaluate the evidence. State v. Sutton, 166 S.W.3d 686, 689-90 (Tenn. 2005). This court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and Gilliam has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

In order to sustain a conviction for theft of property, the State was required to prove beyond a reasonable doubt that Gilliam, with the intent to deprive the owner of property, knowingly obtained or exercised control over the property without the owner's effective consent and that the value of the property was over $1000 but less than $10,000. T.C.A. § 39-14-103, -105(3) (2003). The theft of property with a value of "one thousand dollars ($1,000) or more but less than ten thousand dollars ($10,000)" is a Class D felony. Id. An "owner" is defined as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property. Id. at § 39-11-106(a)(26).

As an initial matter, we note that Gilliam's brief does not cite to any authority in support of his assertion that an owner must have legal title to the stolen property. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." See Tenn. Ct. Crim. App. R. 10(b). Failure to comply with this basic rule will ordinarily constitute a waiver on this issue. Id.; State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). Despite Gilliam's failure to cite to authority, we have reviewed the record in this case and conclude that sufficient evidence was presented to support Gilliam's conviction for theft of property.

Here, although the victim's girlfriend had legal title to the vehicle that was stolen, she testified that the victim would borrow the vehicle "from time to time" because they bought the vehicle together. She further testified that the victim borrowed the vehicle on the night of the offense. We acknowledge this court's holding in State v. Bridgeforth, 836 S.W.2d 591, 593 (Tenn.

Crim. App. 1992), that the term "owner" does not include "anyone other than the person who has title to the stolen property." However, in State v. Wright, No. 03-C-01-9203CR00087, 1992 WL 386323 at *3 (Tenn. Crim. App., at Knoxville, Dec. 29, 1992), this court stated that the term "'owner' as defined by the statute is afforded a more expansive definition than our construction of Rule 701(b) in Bridgeforth." More recently, this court has rejected similar challenges to a victim's status as an owner and held that the State was not required to prove that the victim had legal title. See State v. Perry A. March, – S.W.3d – , No. M2006-02732-CCA-R3-CD, 2008 WL 2743752 at * 12-13 (Tenn. Crim. App., at Nashville, July 15, 2008), perm. to appeal denied (Tenn. May 26, 2009) (discussing the term "owner" and citing State v. Joel Christian Parker, No. M2001-00773-CCA-R3-CD, 2002 WL 31852850, at *2 (Tenn. Crim. App., at Nashville, Dec. 18, 2002) ("stating that pawn shop 'employees' who had no proprietary interest in guns stolen from the shop were nevertheless 'owners' and that the prosecution need not have proven who had title to the stolen property") and State v. Gordon Scott Katz, No. 03C01-9704-CC-00150, 1998 WL 334378, at *3 (Tenn. Crim. App., at Knoxville, June 25, 1998) ("stating that the term 'owner' includes one who is merely a 'beneficial' owner")); see also State. v. Carlos Weeks, No. W2004-02235-CCA-R3-CD, 2005 WL 1566490, at *3 (Tenn. Crim. App., at Jackson, June 23, 2005) ("Evidence of possession is ordinarily sufficient proof of ownership."). Accordingly, we conclude that the victim, Jarriel Twillie, was in lawful possession of the vehicle on the night of the offense; therefore, the evidence was sufficient to support Gilliam's conviction for theft of property.

**II. Reasonable Doubt Instruction**. Gilliam challenges as unconstitutional the following language included in an instruction that was provided to the jury: "Reasonable doubt does not mean a doubt that may arise from possibility." Gilliam acknowledges that he did not raise this issue in his motion for new trial; however, he argues that use of the instruction amounted to plain error. The State claims that Gilliam waived this issue because he did not object to the instruction at trial as required by Tennessee Rule of Appellate Procedure 36(a) or include this issue in his motion for new trial as required by Tennessee Rule of Appellate Procedure 3(e). In addition, the State contends Gilliam is not entitled to plain error review because no breach of a clear and unequivocal rule of law occurred as the Tennessee Supreme Court recently upheld a similar instruction in State v. Rimmer. 250 S.W.3d 12, 31 (Tenn. 2008).

> The trial court instructed the jury as follows:
>
> Reasonable doubt is that doubt created by an investigation of all the proof in the case and an inability after such investigation to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every element of proof needed to constitute the offense.

The trial court's instruction is similar to the one found in Tennessee Criminal Pattern Jury Instruction 2.03 (2007). Both instructions include the sentence, "Reasonable doubt does not mean a doubt that may arise from possibility." In Gilliam's brief, he misquotes the trial court's instruction.

-4-

He quotes the instruction given in Rimmer, which the Tennessee Supreme Court held to be constitutional. 250 S.W.3d 12, 31 (Tenn. 2008).

We conclude that Gilliam waived this issue because it was not included in his motion for new trial. Gilliam was not required to object to the instruction at trial in order preserve the issue for appeal. See Tenn. R. Crim. P. 30(b); State v. Faulkner, 154 S.W.3d 48 (Tenn. 2005). He was, however, required by Tennessee Rule of Appellate Procedure 3(e) to include the issue in his motion for new trial. Rule 3(e) provides that "no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Gilliam failed to comply with Rule 3(e), and therefore the issue is waived.

Because Gilliam did not raise this issue in his motion for new trial, we may only review this issue for plain error. See T.R.A.P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). In State v. Adkisson, this court stated that in order for an error to be considered plain:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations omitted). All five factors must be shown, and it is not necessary to consider every factor if it is obvious that one of the factors cannot be established. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

Consideration of this issue is not necessary to do substantial justice because no clear and unequivocal rule of law was breached. In Rimmer, the Tennessee Supreme Court upheld a jury instruction which also stated, "Reasonable doubt does not mean a doubt that may arise from possibility." Rimmer, 250 S.W.3d at 30. The Court in Rimmer "discourage[d] the further use of this instruction" because the term "possibility" is ambiguous. Id. at 31. The Court stated, however, that "[o]ne ambiguous term does not necessarily constitute error." Id. The Court reviewed the instruction in its entirety, stating:

The sentence preceding the phrase at issue explains that reasonable doubt is the inability to "let the mind rest easily upon the certainty of guilt" after reviewing all the facts. The sentence following directs that absolute certainty of guilt is not required. In context, a fair interpretation is that reasonable doubt does not mean a doubt that may arise from mere possibility no matter how improbable.

Id. The instruction in this case contained the same preceding and proceeding phrases, and therefore a clear and unequivocal rule of law was not breached. Gilliam is not entitled to relief under plain error review.

**III. <u>Admissibility of Prior Conviction for Aggravated Robbery</u>**. Gilliam claims the trial court erred when it ruled that his 2007 conviction for aggravated robbery was admissible. Specifically, Gilliam contends that the trial court erred in finding that the probative value of the conviction outweighed its prejudicial effect on the substantive issues. The State argues that the trial court properly determined that the probative value of the aggravated robbery conviction outweighed its prejudicial effect.

This court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. <u>See</u> <u>State v. Waller</u>, 118 S.W.3d 368, 371 (Tenn. 2003).

The admissibility of an accused's prior convictions is governed by Rule 609 of the Tennessee Rules of Evidence. Rule 609 permits the accused's credibility to be impeached by prior criminal convictions on cross-examination if certain conditions and procedures are satisfied. The conviction must be for a crime (1) punishable by death or incarceration in excess of one year, or (2) involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Generally, convictions that are ten years old or more cannot be used for purposes of impeachment. Tenn. R. Evid. 609(b). Before permitting the use of a prior conviction, the trial court must find that the probative value of the conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. <u>Id.</u>

Trial courts should engage in a two prong analysis when weighing the probative value of the impeaching conviction against its prejudicial effect. Trial courts are required to expressly (1) "analyze the relevance the impeaching conviction has to the issue of credibility," as well as (2) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." <u>State v. Farmer</u>, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992), <u>appeal dismissed</u> (Tenn. 1992). This court has held that "[t]he mere fact a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness." <u>State v. Baker</u>, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citations omitted). However, the Tennessee Supreme Court has recognized when the impeaching conviction is the same as the crime for which the accused is being tried, the unfair prejudicial effect on the substantive issues greatly increases. <u>State v. Mixon</u>, 983 S.W.2d 661, 674 (Tenn. 1999) (citations omitted).

A procedural claim under Rule 609 challenges the process the trial court utilized to reach its decision, rather than the decision itself; however, a substantive claim under this rule challenges the trial court's weighing of the probative value against the unfair prejudicial effect as well as the resulting decision to admit or exclude the prior conviction. <u>State v. Jerry Wayne Lankford</u>, No. E2007-02195-CCA-R3-CD, 2008 WL 4791484, at *4 (Tenn. Crim. App., at Knoxville, Nov. 3, 2008), <u>perm. to appeal denied</u> (Tenn. Mar. 23, 2009). If a trial court fails to comply with the procedural requirements of Rule 609, then the court's decision to admit or exclude a prior conviction is not entitled to deference by the reviewing court. <u>Id.</u> Gilliam does not challenge the process by which the trial court utilized to reach its decision. While he concedes "some probative value toward credulity," he argues that the trial court erred in finding the probative value of his credibility outweighed the unfair prejudicial effect because of the similarity of the prior conviction to the charged offense.

At the Rule 609 hearing, the trial court found that Gilliam's 2007 conviction for aggravated robbery and 2005 conviction for criminal impersonation would be admissible for impeachment purposes. The trial court examined Gilliam's twelve felony convictions, including nine for aggravated robbery. It determined that all of the aggravated robbery convictions were within the ten-year period for Rule 609. In analyzing the relevance of the aggravated robbery convictions to the issue of credibility, the trial court stated, "The question is going to be whether or not we allow the defendant to just get up there and for the jury not to know that he has committed dishonest crimes before so that his character is one not to be believed." It further stated, "Aggravated robbery can be used and I have allowed it to be used in an aggravated robbery trial before for impeachment purposes." The trial court expressed its concern about the prejudicial effect of Gilliam's twelve convictions; however, it stated, "[I]f I did not allow in the aggravated robbery then in my opinion that would do an injustice, so I'm going to allow him to be asked [about] those two offenses."

We conclude that the trial court did not abuse its discretion in admitting the 2007 conviction for aggravated robbery. Robbery is an offense involving dishonesty that is highly probative of credibility. See State v. Welcome, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). The trial court determined that Gilliam's nine convictions for aggravated robbery were extremely relevant to his credibility; however, it attempted to limit their prejudicial effect by only admitting the 2007 conviction and a conviction for criminal impersonation. The trial court did not abuse its discretion in admitting only one of Gilliam's numerous prior convictions for aggravated robbery.

**IV.    Consecutive Sentencing**. Gilliam contends that the imposition of consecutive sentencing violates his rights under the Sixth Amendment. Although he acknowledges within his brief that State v. Gomez, 163 S.W.3d 632 (Tenn. 2005) "is contrary to the defense argument," he respectfully asserts that Gomez was wrongly decided. In response, the State argues that State v. Allen, 259 S.W.3d 671 (Tenn. 2008), is controlling on this issue. We agree.

Without engaging in a lengthy discussion, in Allen, the Tennessee Supreme Court rejected an identical challenge to the constitutionality of consecutive sentencing statute, and held that the statute did not violate the Sixth Amendment. Id. at 689-90. Accordingly, Gilliam is not entitled to relief on this issue.

**V. Election of the Offense**. Gilliam argues that the State failed to elect which act of driving it relied upon at trial. Gilliam asserts the jury might have found he was driving on a suspended license when he drove away from the gas station at around 1:00 a.m. or when he crawled out of the flipped vehicle seven hours later. The State claims it was not required to elect which act of driving was submitted to the jury because driving on a suspended license is a continuing offense. The State also contends that Gilliam waived this issue because he did not include a transcript of the State's closing argument in the record on appeal.

The Tennessee Supreme Court stressed the importance of election in State v. Adams:

"This Court has consistently held that when the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought."

State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999) (citing Tidwell v. State, 922 S.W.2d 497 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801 (Tenn. 1973)). This election requirement serves several purposes. First, it ensures that a defendant is able to prepare for and make a defense for a specific charge. Second, election protects a defendant against double jeopardy by prohibiting retrial on the same specific charge. Third, it enables the trial court and the appellate courts to review the legal sufficiency of the evidence. The most important reason for the election requirement, however, is that it ensures that the jurors deliberate over and render a verdict on the same offense. Brown, 992 S.W.2d at 391; Burlison, 501 S.W.2d at 803. This right to a unanimous verdict has been characterized by this Court as "fundamental, immediately touching on the constitutional rights of an accused . . . . " Burlison, 501 S.W.2d at 804.

24 S.W.3d 289, 294 (Tenn. 2000). The court in Adams also outlined the situations in which an election of offenses is unnecessary:

When the evidence does not establish that multiple offenses have been committed, however, the need to make an election never arises. To this end, this Court has made a distinction between multiple discrete acts that individually constitute separate substantive offenses and those offenses that punish a single, continuing course of conduct. In cases when the charged offense consists of a discrete act and proof is introduced of a series of acts, the state will be required to make an election. In cases when the nature of the charged offense is meant to punish a continuing course of conduct, however, election of offenses is not required because the offense is, by definition, a single offense.

Id.

We agree with the State that Gilliam waived this issue by failing to include a transcript of the State's closing argument in the appellate record. This court has repeatedly held that "a prosecutor's closing argument may effectively serve as an election of offenses." State v. Anthony Allen, No. W2004-01085-CCA-R3-CD, 2005 WL 1606350, at *14 (Tenn. Crim. App., at Jackson, July 8, 2005 (citing State v. William Dearry, No. 03C01-9612-CC-00462, 1998 WL 47946, at *13 (Tenn. Crim. App., at Knoxville, Feb. 6, 1998), perm. to appeal denied (Tenn. Jan. 19, 1999)). By not including a transcript of the State's closing argument, Gilliam failed to comply with Rule 24 of the Tennessee Rules of Appellate Procedure, which requires the appellant to include "a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." The issue is therefore waived because we are unable to determine from the appellate record whether an election was made. See State v. Willie Givens, No. M2000-02883-CCA-R3-CD, 2002 WL 1400049, at *11 (Tenn. Crim. App., at Nashville, June 28, 2002) ("We agree with the State that the appellant's failure to ensure the completeness of the record normally would have entailed waiver of the election issue . . . ."). Accordingly, Gilliam is not entitled to relief on this issue.

**VI. Mens Rea**. Gilliam argues the trial court erred by failing to include a culpable mental state in the jury instructions for the charges of driving on a suspended license and leaving the scene

of an accident. He claims the mens rea of "knowingly" was appropriate because it was included in the indictment for both charges and because Tennessee Code Annotated section 39-11-301 is applicable. He acknowledges that he did not raise this issue in his motion for new trial; however, he claims the use of the instructions amounted to plain error. The State contends that Gilliam waived this issue because it was not included in his motion for new trial. It also argues that Gilliam failed to show the trial court committed plain error.

We conclude that Gilliam waived this issue because it was not included in his motion for new trial as required by Tennessee Rule of Appellate Procedure 3(e). Because the issue is waived, plain error must exist for Gilliam to be entitled to relief. See T.R.A.P. 36(b). In our earlier discussion, we outlined the necessary factors that must be shown in order to obtain plain error relief. Gilliam is not entitled to plain error relief because a clear and unequivocal rule of law was not breached. See State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). This court has held that the offense of driving on a suspended license does not require a culpable mental state. See State v. McDonald, No. 02C01-9206-CR-00126, 1993 WL 312698, at *3 (Tenn. Crim. App., at Jackson, Aug. 18, 1993). This court has also found that a culpable mental state is not required for the misdemeanor offense of leaving the scene of an accident. See State v. James Alan Sheppard, No. M2002-01358-CCA-R3-CD, 2003 WL 21997737, at *3 (Tenn. Crim. App., at Nashville, Aug. 22, 2003) (reasoning that Tennessee Code Annotated section 55-10-101(b) specifies that the mens rea element–"knew or should reasonably have known"–is only required for the felony offense of leaving the scene of an accident). The inclusion of "knowingly" in the indictment for leaving the scene of an accident did not render the jury instruction improper because Gilliam was convicted of the lesser-included misdemeanor offense. See Tenn. R. Crim. P. 31(d)(1)(A). Gilliam is not entitled to relief on this issue.

**Conclusion**. Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE